[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This decision dissolves the marriage of Christopher and Jennifer Nichols. The parties have previously entered into a stipulated agreement resolving all parenting issues. They appeared before this court on March 19 and 20 of this year for a two-day trial of various financial issues. Each party testified at trial, as did the following other individuals:
• John and Lois Nichols, the husband's parents;
• Michael and Donna Kearns, the wife's brother and sister;
• Jean Novicki, the wife's mother; and
• Kristeen Chickering, the wife's cousin.
Each party also introduced various exhibits into evidence.
The court has observed the demeanor of the parties and witnesses and evaluated their credibility. The court has carefully considered all of the evidence, including the exhibits and the testimony presented, according to the standards required by law. The court has carefully considered the statutory criteria for dissolving a marriage and entering orders regarding child support, alimony, orders of life and health insurance and payment of the child's health expenditures, equitable distribution of property, and the award of counsel fees.
After making jurisdictional findings and a brief summary as to the background and situation of each party, the court will discuss the key issues here.
I — JURISDICTIONAL FINDINGS
The court finds that it has jurisdiction over the marriage, the first for each party. One party has resided in Connecticut continually for more CT Page 4087 than one year prior to the bringing of this action. The parties were married in Seymour, Connecticut on April 16, 1999, and have one minor child, Zachary, born on September 28, 1998. No other minor children have been born to the wife since the date of the marriage.[1] The parties have not been recipients of state or municipal assistance. The marriage between the parties has broken down irretrievably with no reasonable hope of reconciliation.
II — THE PARTIES
The plaintiff, Christopher Nichols, is 29 years old and in good health. He is employed as an electrical foreman and his weekly income is $960 gross and $663 net per week. Under the parenting orders of shared custody, the minor child lives with him from Monday to Thursday morning and every other weekend. Since shortly after the parties separated, he has had exclusive possession of the marital home.
The defendant, Jennifer Nichols, is also 29 and in good physical health. Although in good mental health now, she has a history of depression and anxiety, for which she is currently in therapy and on medication. After graduating from high school, she attended a Katherine Gibbs school for nine months, where she received training and a diploma in office administration. She then worked for nine years as an administrative assistant but lost that job in January. Another office job ended after three months because her employer did not retain her after the probation period. She has taken all the necessary courses but not the state licensing exam for a real estate license. She intends to work at home as a realtor after the birth of her second child. Based on her education, skills, and employment history, the court finds she has an earning capacity of at least $35,000 gross per year. Because of the shared custody order under which she has parenting time with Zachary from Thursday morning to Friday afternoon and every other weekend, she, like the plaintiff, needs a home with two bedrooms.
III — DISCUSSION
Neither party seeks alimony except for debt indemnification purposes. The parties do disagree as to child support, however. The plaintiff seeks an order that defendant pay according to the child support guidelines. As defendant is presently unemployed and collecting unemployment compensation benefits of $406 gross and $352 per week net, the presumptive child support amount, which is based on actual current income; see Regs. Conn. State Agencies, §§ 46b-215a-2a (c) and (d); is $70 per week. The defendant seeks an order that she pay that amount until her unemployment benefits cease, and that a court reassess child support CT Page 4088 when she resumes employment. She has a hearing on her unemployment claim soon but does not believe her most recent employer will contest benefits. In view of her earning capacity, it is not presently appropriate to suspend child support when her unemployment benefits terminate without further judicial review. The court will order that she pay the present presumptive child support amount until further order of the court, and that she notify the plaintiff when her unemployment benefits cease or she regains employment. If she then requests a modification of child support, a court may consider whether the shared custody arrangement warrants a deviation. This court cannot so conclude now because, in view of the plaintiff's high shelter costs while he is responsible for the marital home, the court cannot find that he would have sufficient funds to meet Zachary's basic needs after deviation. See Regs. Conn. State Agencies, §§ 46b-215a-3 (b)(6)(A) (ii).
Much of the evidence at trial was directed at the question of equitable distribution of the property between the parties. The court finds that all items listed as assets on each party's financial affidavit are property within the meaning of § 46b-81 and hence subject to equitable distribution by the court. Valuation of the marital home at 106 Old Ridge Road in New Milford, however, is difficult. Each party's financial affidavit values the home differently and lists a different amount for their equity.[2] Neither party offered any other testimony or evidence sufficient to help the court determine the correct value. Based on the evidence available to the court, the court finds the home to have fair market value of between $320,000 and $355,000. Correspondingly, they have equity in the home of between $86,000 and $125,000.
The marital home is currently in foreclosure because the plaintiff did not make mortgage payments in various months after the defendant left the home and he had prevented her from returning to live there. The present cost of reinstating the mortgage is $17,255.12, an amount that includes various fees the mortgagee has incurred in the foreclosure proceeding. Both parties have agreed to sell the marital home in order to preserve as much of their equity as possible. The plaintiff has requested that the court award him $14,000 plus one-half the balance of the equity, and a portion of the personalty. The principal basis for his request to differentiate between the two parties in their shares of equity is his claim that the defendant is at fault for the marital breakdown. The defendant has requested that the plaintiff be required to reinstate the mortgage, she be awarded two-thirds the equity, and the court return to her all personal goods that she brought to the marital home. Her claim for unequal division of the equity is two-fold: that she deserves credit for equity she brought into the purchase of the home and that conduct of the plaintiff is responsible for the failure of the marriage. CT Page 4089
It is obvious from the testimony of both parties and their witnesses that this marriage was in trouble from the very beginning. A justice of the peace who was two hours late for the ceremony, a one-day delay in leaving for the honeymoon, violent insurrection at the site of their honeymoon all augured ill for the future. Any prospect this couple could work through the inevitable complexity of creating a harmonious family life was hampered by the frequent presence of house guests and visitors. Constant renovation and repair of their first house at 3 Sunnyside Avenue, and the many friends and family who pitched in to help, took their time and attention away from each other. The court further finds that the conduct of each party also contributed to the marital breakdown. The court listened carefully to the testimony of each party and each witness regarding fault for the breakdown. From the totality of the evidence, the court finds that neither party is faultless and they share joint responsibility for the dissolution of their marriage.
The court heard testimony about other factors than fault, however, that the court must consider in its distribution of marital property, in addition to findings already made. The court finds that the defendant contributed much of the equity for purchase of the marital home and that most of the household goods and furnishings inside the marital home were items she had obtained before the parties started living together. In addition, the court finds credible the testimony of the defendant that she financed the plaintiff's previous motor vehicle from her 401K account and that he failed to honor an agreement to keep paying for her motor vehicle after they separated, thereby causing its repossession and leaving her without a motor vehicle. Moreover, he took her engagement and wedding rings, which had a value of approximately $8,000.
Each party has resided in separate homes for more than a year. While the defendant has obtained some furnishings for her present residence, she asks the court to award her all the personalty she brought into the marriage. The plaintiff moved into the defendant's Bethel condominium sometime in late 1997 or early 1998. Although the plaintiff earned more than the defendant did for most of the time they lived together, at some point after they began living together he began contributing toward household expenses.
In view of all the factors the court must consider in allocating property, the court finds it fair and equitable, after sale of the marital home, that the plaintiff receive one-third and the defendant two-thirds of the net proceeds from that sale. The court does not find it fair or equitable to award the defendant all the household goods and furnishings she had before the plaintiff moved in. If any items in either house were CT Page 4090 given specifically to the husband or wife by a member of that party's biological family or by anyone else, such an item of personal property should go to that party. Otherwise, the court instead orders the parties to divide equally all remaining household goods and furnishings in each party's home. The defendant's engagement and wedding rings shall remain her property. The court awards to each party any other assets listed on its financial affidavit.
IV — ORDERS
After considering all the statutory criteria for dissolving a marriage and entering orders regarding equitable distribution of property, alimony, support of minor children, orders of life and health insurance, and payment of the children's health expenditures, and the award of counsel fees, together with applicable case law and the evidence presented here, the court hereby enters the following orders:
A. Dissolution of marriage: The marriage of the parties, having broken down irretrievably, is hereby dissolved.
B. Equitable Distribution of Property
 1. Marital Home
The court orders the marital home sold. The court retains jurisdiction over the sale if the parties cannot agree on terms for listing and sale. Plaintiff may continue to reside in the marital home with exclusive rights thereto, until he vacates the home or it is sold. He shall be responsible for making all mortgage payments while he lives there after the date of this decision; any arrearage for payments due after this decision shall be paid out of his share of the equity.
The net proceeds from sale of the marital home, after paying any indebtedness to mortgagees arising prior to this decision, real estate commission, and other costs incident to sale of real property shall be divided between the parties such that plaintiff receives one-third and defendant two-thirds of the net proceeds. Any arrearages in mortgages or real property taxes for the marital home due after the date of this decision shall not be considered in calculating net proceeds from the sale, and the attorney handling the closing for the parties shall pay any such arrearages out of plaintiff's share of the net proceeds.
2. Personal goods and possessions
The court orders equally divided all household goods and furnishings in CT Page 4091 each party's home, except for (a) defendant's rings, which shall remain her property,[3] and (b) any item in either house given specifically to the husband or wife by a member of that party's biological family or by anyone else, which shall remain property of that party. Within ten days of this decision, defendant shall provide plaintiff with a written list of all household goods and furnishings in her residence; if she claims any such items are not subject to distribution because they were a gift to her, she should include on that writing who gave her the item and when. The parties have sixty days to divide the furnishings and goods in the two homes, and the court retains jurisdiction to resolve any disputes that may arise in such division. If they have been unable to agree after thirty days, they shall seek the mediation of family services to help them resolve any disputes they may be having. If mediation does not resolve these differences, each party shall submit to the court a list of all household goods and furnishings; the list shall specify which items the party is seeking and may include a succinct statement as to why.
3. Child's custodial account. The savings account for Zachary in the plaintiff's possession is awarded to the plaintiff. Within 30 days of the date of this decision he shall place all proceeds in that account into a Uniform Gift to Minors Act account.
4. Other Assets. All other assets on each party's financial affidavit are awarded to that party.
5. Debts and liabilities. Except as specifically otherwise set forth herein, each party shall be responsible for paying all debts and liabilities listed on their respective financial affidavits, and shall indemnify and hold the other harmless thereon.
C. Counsel fees. Each party shall be responsible for paying its own counsel fees.
D. Alimony and Support[4]
1. Alimony. The court awards no alimony to either party, except one dollar per year alimony to each party for debt indemnification purposes.
2. Child support. In accordance with the Child Support Guidelines, defendant shall pay child support to plaintiff in the amount of $70 per week. This order is without prejudice to either party's right to claim any deviation criteria after the marital home is sold or defendant is no longer collecting unemployment benefits. Plaintiff shall pay 73% and defendant 23% of all unreimbursed health care expenses[5] in excess of $100 per year and of any child care expenses covered under the child CT Page 4092 support guidelines. Defendant shall notify the plaintiff when her unemployment benefits cease or she regains employment.
3. Health insurance for the minor child. Under General Statutes §46b-84 (f), the court dissolving a marriage must include provisions in the support order for health insurance coverage for any minor children. The court orders the plaintiff to maintain health insurance coverage for the minor child.
4. Educational support order. Pursuant to agreement at trial of the parties, either party may hereafter file a motion or petition for an educational support order pursuant to Public Act 02-218.
E. Parenting Orders
1. The court incorporates by reference into its judgment here the parties' stipulation of February 11, 2003, as to custody and visitation of the children, which the court, Abery-Wetsone, J., that date adopted and entered as an order of the Superior Court.
2. Subject to further order of the court, the court finds, by virtue of the presumption of legitimacy, that the defendant's unborn minor child is issue of the marriage. The court retains jurisdiction over the subject of the child's paternity, and orders the parties, within 90 days after birth of the child, to submit additional evidence as to the child's paternity. If neither party submits such additional evidence sufficient to establish that plaintiff is not the father of this child, then the court orders genetic testing to determine whether plaintiff is the father. The court appoints attorney Gayle C. Carr as guardian ad litem of the unborn child for this limited issue of determining its paternity. In view of defendant's claim, that the plaintiff is not the father, defendant shall be responsible for paying all costs of genetic testing and Attorney Carr's fees related to her carrying out the duties assigned in this paragraph.
F. Restoration of Birth Name: The court orders restoration of defendant's birth name to Jennifer A. Kearns.
 BY THE COURT STEPHEN F. FRAZZINI JUDGE OF THE SUPERIOR COURT